# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY MANUFACTURERS INSURANCE GROUP also known as GEORGE AND PATRICIA TRAMPLER,<br><br>*Plaintiff,*<br><br>v.<br><br>VIVINT SOLAR, INC., et al.<br><br>*Defendants.* | Civil Action No.: 16-cv-4184 (PGS)<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Defendant, Vivint Solar, Inc.'s motion for summary judgment (ECF No. 12).

I.

Plaintiff, New Jersey Manufacturers Insurance Group ("NJM"), a New Jersey insurance company, and the owners of the home insured by it, George and Patricia Templer (collectively, "Plaintiff")[1], bring this tort action against Vivint Solar, Inc., a Utah corporation, for negligence related to an August 29, 2014 fire at the Tramplers' property located at 314 Park Avenue, Union, New Jersey. The Complaint alleges that the fire was caused by the "negligence, carelessness and recklessness" of Defendant and its employee in the design and installation of a solar panel system the insured contracted to purchase from Defendant. (Compl., ¶¶ 4, 6, 15). Plaintiff now seeks to recover from Defendant damages in the amount of $256,914.52 for payments NJM made to its insureds on their claim for property damage and loss of use to their home resulting from the fire.

---

[1] This is a subrogation action commenced by Plaintiff, New Jersey Manufacturers Insurance Group ("NJM"), as subrogee of its insureds, George and Patricia Trampler.

(Compl., ¶ 10-13). Plaintiff alleges the following Counts in the Complaint: (1) negligence; (2) abnormally dangerous activity; (3) breach of contract; (4) breach of warranty; and (5) strict liability. (Compl., ¶ 14-42).

Plaintiff filed a Complaint with this Court on July 12, 2016 (ECF No. 1). Parties engaged in limited discovery[2], as directed by the Court, prior to the filing of this motion for summary judgment, which was filed by Defendant on May, 25, 2017 [ECF No. 10 and 12). (Dkt. 10, ¶5, 6).

The facts leading to the incident alleged in this matter are summarized as follows.

For over twenty years, the Tramplers owned a residence covered by a homeowner insurance policy issued by NJM. In the spring of 2014, Patricia and George Trampler were approached by a Vivint Solar sales representative at their home. They met with the representative for an hour, however, they did not sign a contract on that day. On May 5, 2014, the Tramplers entered into a contract with Defendant. (ECF No. 12; Ex. F). The contract was for the design, installation, service and maintenance of a solar photovoltaic system on the Trampler property and for the purchase of electricity. (Ex. E, No. 10, 12; see also Ex. F, ¶ 1A, 2A). In exchange for the installation of the solar panels and system, the Tramplers were to pay Vivint Solar $0.119 per kWh plus applicable taxes for all energy produced by the solar photovoltaic system for two years. (Ex. F, ¶ 2A). The contract contained, among the other things, a waiver of subrogation clause on Paragraph 19, entitled "SUBROGATION," containing the following language:

> You agree to release all Covered Persons from any claims of
> any parties suing through Your authority or in Your name,
> such as Your insurance company, and You agree to defend Us
> against any such claim. YOU AGREE TO NOTIFY YOUR
> INSURANCE COMPANY OF THIS RELEASE.

(Ex. F, ¶ 19).

---

[2] On March 7, 2017, George and Patricia Trampler were deposed in connection with this lawsuit. (ECF No. 10, Exhibit A, Transcript of Patricia Trampler's Mar. 7, 2017 Deposition; Exhibit B, Transcript of George Trampler's Mar 7, 2017 Deposition).

On August 29, 2014, during the installation process, a fire originated on the exterior of the home, on the roof, directly below what was identified as solar panel 2E in the area of an enphase interactive converter. (Compl. 5-8).[3] The fire caused substantial damage to the home and their personal belongings, which required repairs, restoration and replacement of property as well as the need to find an alternative place to live while the repairs occurred. (Compl. 10). As a result of the fire, the Tramplers filed a claim with NJM for property damages and loss of use and NJM subsequently paid the claim. (Compl. 11-12).

II.

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine

---

[3] The parties dispute whether the power was hooked up to the solar panels when the fire occurred. (ECF No. 12 Ex. B, T. 38:16-22; T. 53:19-24).

issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). " [U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor "that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 Fed. App'x. 222, 227 (3d Cir. 2007).

III.

Defendant argues that each of NJM's insureds signed a valid and binding contract containing a waiver of subrogation clause and/or arbitration clause which acts as an absolute bar to Plaintiff's claims. (ECF No 12-3 pg. 5). Plaintiff argues that the subrogation waiver is unenforceable because it is a contract of adhesion. The Plaintiff also argues that the contract violates the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act (NJTCCWNA). (ECF No. 17 pg.13). Because the Court agrees that the waiver of subrogation clause is unenforceable, Defendant's motion for summary judgment is denied.

This Court has defined the concept of subrogation in a recent decision, *Allstate New Jersey Ins. Co. v. Avalonbay Communities, Inc.*, No. CV 16-5441, 2017 WL 1095473, at *2 (D.N.J. Mar. 22, 2017). There, Judge Walls stated,

> Subrogation is the "principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy." *Black's Law*

*Dictionary* 1440 (7th ed.1999). An insurer who indemnifies its insured for a loss caused by a third party is subrogated to whatever rights the insured may have had against the third party. *Standard Accident Ins. Co. v. Pellecchia*, 15 N.J. 162, 171, 104 A.2d 288 (1954).

The right to subrogation is not absolute, and parties may agree to waive or limit it. *LIG Ins. Co. v. Bonanno Real Estate Grp. II, L.P.*, No. A-4489-11T4, 2013 N.J. Super. Unpub. LEXIS 1660, 2013 WL 3329746, at *3 (N.J. Super. Ct. App. Div. July 3, 2013).

Plaintiff argues that the contract at issue in this case does not meet the requirements mandated by N.J.S.A. 56:12-2. Pursuant to NJTCCWNA, N.J.S.A. 56:12-2, "[a] consumer contract... shall be written in a simple, clear, understandable, and easily, readable way." In determining whether a contract meets said requirements we review the guidelines provided by N.J.S.A. 56:12-10.

Among the requirements that may be considered to ensure compliance with N.J.S.A. 56:12-2 are:

> (1) Cross references that are confusing;
> (2) Sentences that are of greater length than necessary;
> (3) Sentences that contain double negatives and exceptions to exceptions;
> (4) Sentences and sections that are in a confusing or illogical order;
> (5) The use of words with obsolete meanings or words that differ in their legal meaning from their common ordinary meaning;
> (6) Frequent use of Old English and Middle English words and Latin and French phrases.
>
> b. The following are examples of guidelines that a court, the Attorney General or the Commissioner of Insurance, in regard to contracts of insurance provided for in subsection c. of section 1 of this act (C. 56:12-1c.), may consider in determining whether the consumer contract as a whole complies with this act:
>
> (1) Sections shall be logically divided and captioned;
> (2) A table of contents or alphabetical index shall be used for all contracts with more than 3,000 words;
> (3) Conditions and exceptions to the main promise of the agreement shall be given equal prominence with the main promise, and shall be in at least 10 point type.

N.J.S.A. 56:12-10. The main issue in question in this matter is the subrogation section. (Ex. F, ¶ 19).

Plaintiff alleges, among other violations, that the clause at issue, the subrogation waiver, was provided without an explanation of the legal meaning of "subrogation, violating N.J.S.A. 56:12-10(5). The parties dispute the legibility and size of the contract's text. Plaintiff argues that that contract did not meet the required font size mandated by the statute in N.J.S.A. 56:12-10(3). Defendant argues that the original contract was printed in legal size papers, while the copy provided to the Court was formatted to fit a regular size paper. Additionally, Defendant contends that the legibility of the contract is irrelevant as the Tramplers admitted to not reading the entirety of the contract before signing it, notwithstanding Paragraph 6 of the contract, entitled "NOTICE TO CUSTOMERS," and specifically section (C) of that paragraph, containing the following language:

> C. DO NOT SIGN THIS AGREEMENT BEFORE YOU HAVE READ ALL OF ITS PAGES. You acknowledge that You have read and received a legible copy of this Agreement, that We have signed the Agreement, and that You have read and received a legible copy of every document that We have signed during the negotiation.

(Ex. F, ¶ 6(C); see also Ex. E, No. 20)(Ex. A T20: 16-21:21; Ex. B, T. 45:2-6, T. 81:14-23). In response to this argument, Plaintiff cites to *Peter W. Kero, Inc. v. Terminal Const. Corp.*, 6 N.J. 361, 368 (1951) which stands for the principle that when the execution of a contract has been procured by fraud the general rule that one who does not read a contract before signing cannot later avoid being bound by its terms does not apply.

Plaintiff also argues that the subrogation waiver that was part of the contract signed by the Tramplers should not be enforced because it was a contract of adhesion which imposes a separate affirmative duty on Plaintiff. The Court finds this argument to be persuasive.

"In New Jersey, courts enforce subrogation waivers based on the rationale that courts should not get in the way if parties waive their rights to subrogation because they 'intended to shift the risks of loss to insurance policies which they undertook to procure.'" *Allstate New Jersey Ins. Co.. v. Avalonbay Communities, Inc.*, 2017 WL 1095473, at *3 (citing *Borate*, 288 N.J. Super. at 347). "The rationale behind the validity of these waivers depends on the contracting parties having a meaningful choice in how to distribute liability." *Id.*

"A contract of adhesion is defined as one 'presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity for the 'adhering' party to negotiate.'" *Stelluti v. Casapenn Enterprises, LLC*, 203 N.J. 286, 301, 1 A.3d 678, 687 (2010) (internal citation omitted.)

> If an agreement is determined to be a "contract of adhesion," non-enforcement of its terms may be justified if they are unconscionable. [...] To make this determination, "courts have looked not only to the take-it-or-leave-it nature or the standardized form of the document but also to the subject matter of the contract, the parties' relative bargaining positions, the degree of economic compulsion motivating the 'adhering' party, and the public interests affected by the contract."

*Allstate New Jersey Ins. Co.*, 2017 WL 1095473, at *3 (internal citations omitted). Courts will also consider "whether enforcement of the contract implicates matters of public interest." *Stelluti*, 203, N.J. at 301. Additionally, New Jersey courts have recognized that the knowledge and sophistication of a contracting party may be a factor in determining whether a contract is one of adhesion. *See Owens-Illinois v. United Ins. Co.*, 264 N.J. Super. 460, 488 (App. Div. 1993).

We review the validity of the waiver also in light of its exculpatory nature. "As a threshold matter, to be enforceable an exculpatory agreement must 'reflect the unequivocal expression of the party giving up his or her legal rights that this decision was made voluntarily, intelligently and with the full knowledge of its legal consequences.'" *Stelluti*, 203, N.J. at 304-05 (quoting *Gershon v. Regency Diving Ctr., Inc.*, 368 N.J. Super. 237, 247, 845 A.2d 720 (App. Div. 2004). "Any

7

doubts or ambiguities as to the scope of the exculpatory language must be resolved against the drafter of the agreement and in factor of affording legal relief." *Gershon*, 368 N.J. Super. at 247. (citations omitted).

New Jersey courts have identified four considerations, pertinent to the enforcement of an exculpatory agreement, stating that they will be enforced if:

> (1) it does not adversely affect the public interest; (2) the exculpated party is not under a legal duty to perform; (3) it does not involve a public utility or common carrier; or (4) the contract does not grow out of unequal bargaining power or is otherwise unconscionable.

*Gershon*, 368 N.J.Super. at 248, 845 *A*.2d 720 (citations omitted).

The contract in question in this matter was printed on a standardized form and concerned the sale of electricity. The contract was provided as a take-it-or leave it approach with an option to either contract for ten or twenty years. The Tramplers were equipped with inferior sophistication on the subject of the contract or its legal consequence. The Tramplers are both 64 years old and collecting social security. They likely were enticed by the prospective of saving money on electricity and entered the contract not fully understanding what it entailed.

The subrogation waiver is also against public interest because it fails to define subrogation, who the waiver is releasing from liability, its nature and its scope. It would be difficult for an individual unfamiliar with the purpose of this clause to assess the legal consequences that accepting it would lead to. Thus, there is public interest in preventing companies from shielding themselves from liability and damages suffered by those impacted by their negligence. Additionally, the language of the contract imposes a duty on the consumer to notify the insurance company on the agreed upon terms.

Given the unclear manner in which the subrogation clause in this matter was drafted, Plaintiff may be able to show that the contract constituted a contract of adhesion if it can show that the insured lacked meaningful choice in the acceptance of the subrogation waiver in the contract. *See Stelluti v. Casapenn Enterprises, LLC*, 203 N.J. 286, 301 (2010); *See also Allstate New Jersey Ins. Co.. v. Avalonbay Communities, Inc.*, 2017 WL 1095473, at *3.

Thus, the motion for summary judgment is denied.

## ORDER

THIS MATTER having been opened to the Court by Defendants' motions for summary judgment (*see* ECF No.12); and the Court having fully considered the submissions in support thereof, and any opposition thereto; and having considered the arguments of counsel; and for good cause shown;

IT IS on this __LO__ day of February, 2018,

**ORDERED** that Defendant's motion for summary judgment (ECF No. 12) is denied.

_____
PETER G. SHERIDAN, U.S.D.J.